**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Luis A. García-Pagán,**<br><br>  Petitioner<br><br>  v.<br><br>**United States of America,**<br><br>  Respondent. | CIVIL NO. 17-1273 (PG)<br>Related Crim. No. 13-123 (PG) |

## OPINION AND ORDER

Before the court is petitioner Luis A. García-Pagán's ("Petitioner" or "García-Pagán") amended motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 13), and the United States' (or the "government") response in opposition thereto (Docket No. 39). For the reasons explained below, the court **DENIES** Petitioner's motion to vacate.

### I.   BACKGROUND

On February 28, 2013, a grand jury returned a two-count indictment charging García-Pagán and co-defendant Ricardo Urbina-Robles ("Urbina") of aiding and abetting a carjacking, in violation of 18 U.S.C. § 2119(1) ("Count One"), and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Two"). See Crim. No. 13-123 (PG) (hereinafter "Crim."), Docket No. 11.

#### A. The Facts

For expediency purposes, the court takes the facts relevant to the matter at hand directly from the First Circuit Court of Appeals' decision in United States v. García-Pagán, 804 F.3d 121, 122-124 (1st Cir. 2015).

At approximately 1:40 a.m. on February 4, 2013, three men broke into the home of Dr. Noel De León–Roig in Puerto Nuevo, Puerto Rico. All three intruders wore masks and carried firearms. One of the men woke De León by straddling his head and hitting him in the face. When the lights in the room came on, De León saw his twelve-year-old son with the other two assailants. One was pushing a revolver into the boy's mouth. The other held a gun to the back of the boy's head. At that point, one of the assailants said, "Doctor, lower your eyes. Lower your arms. This is a robbery, you son of a bitch."

Over the next hour and a half, the three assailants terrorized De León and his son. They took tens of thousands of dollars from De León's safe, along other valuables. The intruders tied up the doctor and his son, hit them with guns, and threatened to execute them. Around 3:00 a.m., the assailants left in De León's car, and De León called the police.

For a stretch of time during the invasion, the robbers removed their masks in order to eat pizza and drink soda that they had found in De León's kitchen. And so De León saw their faces. De León later identified García as one of the assailants from a group of nine people in a photo array within one minute of being shown the photographs. De León made that identification very soon after the break-in, at approximately 9:00 a.m. the same day. De León identified García again in the courtroom at trial. De León described García as "the focused one" of the three assailants, and he described one of the other assailants, Ricardo Urbina–Robles, as the leader of the group.

García argued at trial that he had been misidentified. He introduced the alibi testimony of his wife, his mother, and a friend. Together, these three people testified that García saw a film with his family on the evening of February 3, and then, sometime in the early hours of February 4, returned with his family to the housing complex where García lived. García's wife testified that, after their return from the film, García was in bed the entire night.

After the close of the evidence and before closing arguments, defense counsel requested a continuance in order to move for a writ of habeas corpus ad testificandum for Urbina, to enable Urbina, who was then incarcerated and awaiting sentencing following his guilty plea for his involvement in this same crime,

> to be present and testify in person on García's behalf.[1] See 28 U.S.C. § 2241(c)(5) (providing for such a writ). The court denied the request.

### B. Conviction and Sentence

Following trial by jury, the court sentenced García-Pagán to a total term of 420 months--180 months as to Count One, plus 240 months as to Count Two, to be served consecutively. See Crim. Docket No. 201. García-Pagán filed a notice of appeal on May 9, 2014. See Crim. Docket No. 239.

The First Circuit affirmed García-Pagán's conviction and sentence and dismissed without prejudice two claims of ineffective assistance of counsel. The appellate court held that the district court did not abuse its discretion in denying García-Pagán's request for a continuance of trial for counsel to file a motion for writ of habeas corpus *ad testificandum*. See García- Pagán, 804 F.3d at 126 (1st Cir. 2015).

On February 23, 2017, García-Pagán filed a motion to vacate, set aside or correct his sentence. See Docket No. 1. He later amended his motion. See Docket No. 13.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

---

[1] Defense counsel, attorney Olga M. Shepard-De-Mari, raised the issue earlier, after the court denied the defense's Rule 29 motion. See Crim. No. 13-123, Docket No. 258 at 116-118. But counsel did not request a continuance at that time. Id. Rather, counsel simply informed the court that she had served a subpoena to obtain Urbina's presence, and that she had been instructed to do so by the United States Marshals. Id. The court instructed defense counsel that this was the wrong procedure, and that she should have filed a request for a writ of habeas corpus *ad testificandum*. Id. Then, the day before closing arguments, the court raised the issue on its own. See Crim. Docket No. 257 at 179-180. Defense counsel did not request a continuance at that moment either. Id.

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

Moreover, the Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, García-Pagán moves to vacate his sentence on an ineffective assistance of counsel basis, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden).

For García-Pagán's claim to succeed, he must satisfy a two-part test. First, García-Pagán needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 599 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688). Second, petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)). Thus, the petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510

F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

### III.   DISCUSSION

In the pending motion, García-Pagán claims that defense counsel rendered ineffective assistance because she did not secure alibi witness testimony from co-defendant Urbina; failed to investigate and secure evidence in Petitioner's favor and failed to advocate for mitigation at sentencing. <u>See</u> Docket No. 13. He also challenges his conviction under Section 924(c)'s residual clause arguing that it is unconstitutionally vague after <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) (<u>Johnson II</u>). <u>See id.</u>

In its response, the government submits these claims fail because (1) counsel's failure to present the testimony of co-defendant Urbina as an alibi witness did not fall below an objective standard of reasonableness and, at any rate, Petitioner was not prejudiced as a result; (2) counsel did not fail to investigate and secure evidence in favor of Petitioner; (3) counsel neither failed to advocate for mitigation nor failed to object to a leadership role enhancement at the sentencing stage, and (4) <u>Johnson II</u> does not support Petitioner's collateral attack to his Section 924(c) conviction. <u>See</u> Docket No. 39.

**A. Ineffective Assistance of Counsel Claims**

**1. Failure to Secure Testimony of Co-Defendant Awaiting Sentence**

As noted earlier, García-Pagán claims attorney Shepard-De-Mari rendered him ineffective assistance because she did not request a writ of habeas corpus *ad testificandum* to procure Urbina as an alibi witness. He avers that counsel's failure prejudiced his defense.

See Docket No. 13 at 9. Attached to Petitioner's motion to vacate is an affidavit where Urbina states he is willing to testify that "all [he] knows is that Luis García Pagán has nothing to do with the events in this case because I do not know him." See Docket No. 19-1.

The government counters that counsel's "failure" to call Urbina was a tactical decision made as part of her overall trial strategy and that, at any rate, Petitioner has not demonstrated that there is a substantial likelihood that the testimony in question would have secured a different, favorable result. See Docket No. 39 at 12. In support, the government points to notes obtained by Petitioner's attorney from the forensic investigator who interviewed Urbina back in 2013—and concluded he would be an unreliable witness. See id. at 14. The government further argues that his testimony would have been against the testimony of the government's witnesses, including the victim's. See id. at 14-15 (citing Gonzalez-Soberal v. United States, 244 F. 3d 273, 278 (1st Cir. 2001)) (discussing the elements with which to evaluate whether counsel's performance for failure to call a prospective witness, including the potential value of the witness's testimony in undermining the credibility of the prosecution's witnesses).

As the First Circuit pointed out, even sidestepping counsel's belated request for a continuance to move for a writ for habeas corpus *ad testificandum*, the fact is that Urbina was awaiting sentence at the time of Petitioner's trial and thus retained his Fifth Amendment right against self-incrimination. There was no assurance that Urbina would have waived this right and testified, if so compelled. See García-Pagán, 804 F.3d at 124; see also Crim. Dockets No. 257, 258 (trial transcripts). Notwithstanding the Urbina's statement regarding

his willingness to testify on Petitioner's behalf, which the court views with skepticism,[2] counsel's purported failure does not constitute deficient performance. Pertinently, the decision to call a particular witness is almost always a strategic one. See Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).

The court finds that given the high degree of uncertainty regarding Urbina's willingness to testify and the fact that the defense presented three other alibi witnesses, García-Pagán cannot "overcome the presumption that" defense counsel's failure to call him as a witness "might be considered sound trial strategy.'" Id. (quoting Strickland, 466 U.S. at 689); Knight v. Spencer, 447 F.3d 6, 16–17 (1st Cir. 2006) (holding that failure to call alibi witness open to significant impeachment after six alibi witnesses have already been called was a tactical decision); Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000) (holding that failure to call expert who could not testify as to whether fingerprint belonged to defendant did not constitute ineffective assistance).

Even assuming defense counsel's failure to call Urbina could fall below an objective standard of reasonableness, García-Pagán's fails to meet the "prejudice" prong of the Strickland analysis. This court echoes the First Circuit in noting that "Urbina's testimony would have been up against the testimony of the victim." García-Pagán, 804 F.3d 124. At trial, Dr. De León "testified that he was with the assailants for approximately an hour and a half and saw the assailants with their masks off." Id. Dr. De León identified García-Pagán within a minute of seeing a photograph lineup and again, at trial, identified him as one of the assailants. Id. Moreover, García-Pagán presented the alibi testimony of three witnesses

---

[2] See United States v. Montilla–Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997) (quoting United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992)) (recognizing the inherently suspicious nature of co-defendant's testimony provided only after the co-defendant has been convicted and sentenced because "[a] convicted, sentenced co-defendant has little to lose (and perhaps something to gain) by such testimony").

to dispute the victim's testimony that García-Pagán participated in the robbery and carjacking. This shows that his attorney was sufficiently effective in presenting an alibi defense.

Given that the jury ultimately believed Dr. De León's testimony, the court finds no reasonable probability that the jury's verdict would have been different had Urbina testified. See Levasseur v. Pepe, 70 F.3d 187, 195 (1st Cir. 1995) (noting that an assault victim's degree of attention during a traumatic incident "is presumed to have been acute," supporting the credibility of an identification). Here, the victim's identification of García-Pagán was crucial to the jury's determination of guilt.

Based on the foregoing, the court finds that Petitioner's allegations—as they pertain to counsel's decision not to call Urbina as a witness—neither show objectively deficient performance by trial counsel nor prejudice. Having failed to satisfy either prong of the Strickland test, his claim necessarily fails.

### 2. Failure to Investigate and Secure Evidence

García-Pagán claims that his trial counsel was ineffective because she failed to investigate the true identities of the individuals who committed the crimes, scrutinize the government's investigation of the crimes and the lineup identification that was conducted thereafter, and secure security video footage from San Patricio Plaza, to which he attaches exculpatory value. See Docket No. 13 at 10-13.

First, García-Pagán's claim as to trial counsel's failure to adequately investigate the true identity of those involved in the robbery and carjacking is a conclusory one. Id. at 10. García-Pagán does not explain how or why counsel's investigation was deficient nor has he detailed the evidence that would have been uncovered by counsel. Petitioner merely states

that more investigation was required from the defense. Thus, this perfunctory claim fails. See United States v. Diaz-Castro, 752 F.3d 101, 114 (1st Cir. 2014) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (holding that arguments not clearly developed are deemed waived).

Second, García-Pagán's claim regarding defense counsel's failure to poke holes in the government's investigation and challenge the lineup cannot prosper either. At odds with his claim, García-Pagán accepts that trial counsel filed a motion to suppress the lineup identification. See Crim. Docket No. 136. He avers that said motion was lacking information that would have aided the court to conduct a preliminary assessment of the investigation's trustworthiness. See id. He specifically alludes to unrelated criminal charges filed against one of the law enforcement officers who participated in the investigation of the robbery and carjacking. The court provides some context below.

At trial, CIC Agent Gilberto Moya testified that on the day of the events he was the first to arrive at the scene. He was also the first law enforcement officer to interview Dr. De León. See Crim. Docket No. 248. He testified that PRPD Agent Angel Quiñones took over the investigation and interviewed the victim. As Petitioner points out, however, Agent Moya could not ascertain the contents of Agent Quiñones' interview with the victim. Moreover, Petitioner contends that Dr. De León did not give Agent Moya any details regarding the individuals who committed the robbery; that was supposedly covered in the interview conducted by Agent Quiñones. In addition, Petitioner claims that neither Agent Moya nor Agent Quiñones prepared the lineup. In sum, García-Pagán argues that defense counsel failed to conduct an appropriately exhaustive investigation to tie these loose ends, and therefore, it is impossible to prove that the law enforcement agents unduly influenced the

investigation process. Still, that fact in and of itself does not buttress Petitioner's allegations into a constitutional violation.

Petitioner further argues that sometime after the investigation took place, Agent Quiñones was arrested and charged with, *inter alia,* conspiracy to interfere with commerce by robbery under 18 U.S.C. § 1951(a), and aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence under § 924(c). The documents submitted by García-Pagán show that Agent Quiñones eventually plead guilty to aforesaid charges. This information was not included in the motion to suppress filed by Petitioner's attorney, and he now suggests that such omission rendered the representation constitutionally defective. The court disagrees.

At the outset, the court fails to understand the connection between the unrelated criminal charges against *one* of the law enforcement officers who investigated the scene and García-Pagán's conviction and sentence. Second, García-Pagán has never alleged that this agent unduly influenced the interviewing or identification process. Nonetheless, even if García-Pagán had made such an assertion, he has not pointed to any evidence with which to support the same. More importantly, García-Pagán fails to show that omitting the information concerning the charges against Agent Quiñones in the motion to suppress was objectively unreasonable, or that, but for counsel's omission, the motion would have been meritorious. In other words, Petitioner has not shown (and there is no reason to believe) the court would have ruled differently and granted the motion.

Lastly, García-Pagán's claim regarding counsel's failure to adequately investigate San Patricio Plaza's security video footage falls flat on its face.

García-Pagán admits that defense counsel did, in fact, ask for the videos, but they had already been deleted. Docket No. 13 at 13. Petitioner thus concedes that attorney Shepard-De-Mari did not altogether fail to consider, investigate or procure surveillance footage to present it at trial. García-Pagán assumes that counsel did not promptly apply for a court order to obtain the videos before they were deleted. But his argument rests on pure speculation. Assuming arguendo that counsel could have secured the videos before they were deleted, Petitioner falls short on the prejudice prong of the Strickland test, as he has not shown that there was a reasonable probability that the outcome of his trial would have been different but for defense counsel's alleged misstep. In this regard, the court refers to the trial transcripts which show that defense counsel did present the testimony of three witnesses to establish the alibi defense. Therefore, this claim also fails.

### a. Failure to seek DNA testing

García-Pagan filed a supplemental motion raising a fourth ineffective assistance of counsel claim. He alleges that he requested trial counsel to seek DNA testing of items recovered at the crime scene, e.g., water bottles and gloves, that seemed to belong to the assailants. See Docket No. 21. Petitioner claims the results of such analyses were necessary "to advance his alibi defense." Id. at 2. Oddly, he concedes "[h]is attorney did seek the Court's authorization for conducting DNA tests." The three-paragraph motion leaves it at that. Ultimately, Petitioner's grounds for claiming actual ineffectiveness or prejudice are unclear and underdeveloped, and the court will not warm the bench for arguments that are waived. See Diaz–Castro, 752 F.3d at 114 (citing Zannino, 895 F.2d at 17). Even overlooking this waiver, nothing suggests any likelihood that the result of forensic testing would have been exculpatory, let alone so exculpatory as to overturn his conviction. See Rice v. Hall, 564 F.3d

523, 526 (1st Cir. 2009) (rejecting ineffective assistance of counsel claim based on attorney's failure to seek forensic evidence where conviction was heavily supported by evidence and petitioner's argument as to prejudice "rest[ed] almost entirely upon 'mays' and 'could haves'").

### 3. Attorney's Performance at Sentencing

García-Pagán avers that he was denied his constitutional right to effective assistance of counsel because counsel failed to advocate in support of mitigation at sentencing and to object to a leadership role enhancement. See Docket No. 13 at 13-15. He argues that the alleged errors by counsel resulted in a sentence of 420 months of imprisonment, a term five year longer than Urbina's, whom the victim identified as the leader of the assailants. Id. at 15. Additionally, García-Pagán avers that counsel should have relied on different caselaw to attack the government's proposed four-level enhancement for "serious physical injury." See id.

In its response, the government argues that García-Pagán's claim fails because, at sentencing, counsel did assert mitigating factors in his favor. Second, the allegations regarding counsel's failure to object to a leadership role enhancement are not only underdeveloped and unsupported, but also, belied by the record. See Docket No. 39 at 18; Crim. Docket No. 192 at 11-12.

The court agrees with the government. First, the record demonstrates that counsel did argue in favor of mitigating García-Pagán's sentence. Moreover, counsel argued against a four-level "serious bodily injury" enhancement.[3] See Crim. Docket No. 256 at 9-11.

---

[3] García-Pagán argues that counsel should have supported her arguments with caselaw contrary to that relied on, thus implicitly conceding that counsel *did* argue against the enhancement.

Furthermore, a leadership role enhancement was neither recommended by the government nor applied at sentencing. See Crim. Dockets No. 256 at 9-11 & 192 at 11-12. Hence, both claims inevitably fail. As for the reasonableness of his sentence, the court need only refer to the First Circuit's decision discussing the reasonableness, both procedurally and substantively, of Petitioner's sentence. See García-Pagán, 804 F.3d at 126.

### B. Section 924(c) Convictions

García-Pagán claims that the court must vacate his Section 924(c) conviction because Section 924(c)'s residual clause is unconstitutionally vague after Johnson II, and his carjacking convictions fail to categorically qualify as crimes of violence under the statute's force clause. See Docket No. 13 at 16 (incorporating by reference the grounds asserted in the motion to vacate at Docket No. 1). In support, García-Pagán contends that intimidation does not amount to the use, attempted use, or threatened use of "violent force," and that aiding and abetting does not require "violent force."

All of Petitioner's arguments fail in light of recent decisions by the First Circuit and this court. For example, in United States v. Cruz-Rivera, 904 F.3d 102, 65-66 (1st Cir. 2018), the First Circuit held that the defendant's carjacking convictions qualified as crimes of violence under Section 924(c)'s force clause. Similarly, the Court has also concluded that "any possible infirmity of Section 924(c)'s residual clause provides…no exculpation because [a] Hobbs Act robbery still qualifies as a crime of violence under the force clause of [S]ection 924(c)." United States v. Garcia-Ortiz, 904 F.3d 102, 106 (1st Cir. 2018) (alteration in original). This court, too, has rejected the same or similar void-for-vagueness challenges to Section 924(c) convictions raised by other habeas petitioners. See, e.g., Echevarria-Pacheco v. United States, Civil No. 17-1269 (PG), 2018 WL 4676945 (D.P.R. Sept. 26, 2018); Valentin-

Manon v. United States, Civil No. 16-2225 (PG), 2018 WL 4501110, at *3-5 (D.P.R. Sept. 18, 2018); Cruz-Arboleda v. United States, Civil No. 16-2216 (PG), 2018 WL 3031480, at *2-3 (D.P.R. June 14, 2018). Finally, this court has also rejected the argument that aiding and abetting does not require "violent force." Cruz-Arboleda, 2018 WL 3031480, at *3 (citing United States v. Mitchell, 23 F.3d 1, 3 (1st Cir. 1994)) (holding that aiding and abetting the commission of a crime of violence is a crime of violence itself).

Consistent with the above-cited decisions, the court finds Petitioner's claims are meritless.

### C. Evidentiary Hearing

García-Pagán has requested an evidentiary hearing. See Docket No. 13 at p. 16. The United States, in turn, believes that such a hearing is not necessary. Evidentiary hearings in § 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. See Moreno–Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

In García-Pagán's case, even if the court deemed his petition as facially adequate, the fact of the matter is that the record belies his allegations. Having ruled that the García-Pagán's ineffective assistance of counsel claims lack merit, the court finds that a hearing is not warranted. Accordingly, García-Pagán's request is **DENIED.**

## IV.    CONCLUSION

Based on the above, the court **DENIES** Petitioner's request for habeas relief under 28 U.S.C. § 2255 (Docket No. 13). This case is, therefore, **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

## V.    CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, October 22, 2018.

                                                  S/ JUAN M. PÉREZ-GIMÉNEZ
                                                  **JUAN M. PÉREZ-GIMÉNEZ**
                                                  **SENIOR U.S. DISTRICT JUDGE**